UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ALTICOR, INC.,

        Plaintiff,

Case No. 1:07-CV-522

v.

Hon. Richard Alan Enslen

NATIONAL UNION FIRE INSURANCE
COMPANY OF PENNSYLVANIA,

**OPINION**

        Defendant.

_____/

      This matter is before the Court on competing Motions for Summary Judgment.  This lawsuit alleges a breach of a settlement agreement in an earlier lawsuit–*Alticor v. National Union Fire Ins. Co. of Pa.*, case No. 1:03-cv-350 (W.D. Mich.)  More particularly, the parties dispute whether Defendant National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") has violated clause 1.b of the Agreement, establishing National Union's "continuing duty to defend Alticor in the "Texas Litigation" with regard to defense costs incurred by Alticor after April 17, 2006."[1]   (Compl., Ex. A at 1.)

      The questions posed in the briefing are: whether this "continuing duty to defend" obligated Defendant to pay attorney fees for pursuing affirmative claims in bankruptcy;  whether Defendant may limit the rates of compensation for the attorneys and not pay legal database service costs; and

---

[1] This term refers to three Texas lawsuits against Alticor filed by Alticor distributions: *i.e., Morrison et al. v. Amway Corp. et al.*, case no. 98-0367 (S.D. Tex.); *Griffith et al. v. Amway Corp. et al.*, case no. 98-17491 (Harris Co., Tx.); and *Vance v. Amway Corp. et al.*, case no. 99-44470 (Harris Co., Tx.).   According to the record exhibits, Alticor has incurred $766,486.29 of fees since April 17, 2006.  (Alticor, Br. in Supp. of Mot., Ex. F.)  Of those, National Union has paid $327,126.78.  (*Id.*)  The balance is $439,359.51.

whether Defendant owes a statutory penalty for its delayed payment of the insured's fees.   Oral

argument is unnecessary in light of the briefing received.  *See* W.D. Mich. LCivR 7.2(d).

### BACKGROUND

This is a diversity suit between the Michigan Plaintiff (Alticor) and the Ohio Defendant

(National Union).  The claim is based on state insurance and contract law; the parties have both

briefed such issues based on Michigan law.

This dispute has been long in the making.  In 2003, Alticor filed suit against its insurer

(National Union) due to failure to defend Alticor as to the Texas litigation.[2]  The focus of the suit

was whether the duty to defend was subject to one or multiple deductibles, which was significant

because the deductible was set at $2 million.  This Court ruled that the lawsuits represented a single

occurrence subject to a single deductible.  *Alticor v. National Union*, case no. 1:03-cv-350, 2005 WL

2334658 (W.D. Mich. Sept. 23, 2005).  After this ruling, the law suit settled, the settlement requiring

National Union to pay $7 million of past defense costs and to pay future defense costs incurred by

Texas counsel.  (Compl., Ex. A at 1.)

This lawsuit has happened in no small measure because of what has transpired in the Texas

litigation.  After April 17, 2006, Alticor succeeded in an arbitration pressing affirmative claims for

attorney fee reimbursement, but saw this success dissipate with a Fifth Circuit Court of Appeals'

decision holding that the agreement to arbitrate under state law was illusory and, therefore, reversing

the district court's order denying a motion to vacate the arbitration award.  *Morrison v. Amway

Corp.*, 517 F.3d 248, 257-58 (5th Cir. 2008).  Much of the litigation after the arbitration award  has

---

[2]*Alticor, Inc.  v. National Union Fire Ins.*, case no. 1:03-cv-350 (W.D. Mich.).

2

been in bankruptcy since the arbitration award caused many of the distributors to file bankruptcy in the Southern District of Texas.  (*See* A. Guitar Dep. 35-36, referring to adjustment of bankruptcy claims).   As to the bankruptcy distributors, Alticor has filed bankruptcy claims seeking reimbursement of defense costs, and National Union has failed to pay the attorney fees associated with the claims because it does not deem them "defense costs."  (*Id.* at 40-41.)

While National Union did pay many of the attorney fees sought by Alticor (some $327,126.78 of fees after April 17, 2006), it limited the rate of any attorney fees paid to $410 per hour.  (National Union Br. in Supp. of Mot. for Summ. J., Ex. B.)  National Union refused to pay the higher rates because it did not regard the employment of "out-of-town specialists" as necessary to the defense of this litigation.  (*Id.*)  The record reflects that National Union refused to pay electronic legal database charges (Lexis and Westlaw) because it regarded these expenses as not reasonable and necessary attorney fees.  (*Id.*)

National Union further halved the reimbursement of 161 hours of argument preparation time spent in connection with the Fifth Circuit Court of Appeals' appeal 06-20138 (equaling a $30,614 reduction).  (*Id.; see also* Alticor's Br. in Opp., Ex. 2.)   A substantial portion of those hours were spent doing associated tasks, including preparation of a statement of supplemental authority under Fed. R. App. P. 28(j), review of the extensive record, and legal analysis of other decisions by panel members.  (Alticor's Br. in Opp., Ex. 2.)   The various billings submitted by Alticor to National Union for payment included a 9 percent discounting of the attorney services.  ((National Union Br. in Supp. of Mot. for Summ. J., Ex. B.)

At the time of the settlement, National Union knew that Alticor was pursuing a strategy of filing claims with the Texas bankruptcy courts and did not object to the strategy.  (*Id.* at 16.)

3

National Union has never taken an active role in the Texas Litigation and has left matters of trial and defense strategy to retained counsel. (Guitar Dep. 19-20.) This is because, in large measure, Alticor has chosen to retain a large portion of its defense costs internally ($2 million deductible) and to manage defense costs in connection with those defense costs. (Hultink Dep. 35.)

**LEGAL STANDARDS**

The competing Motions are brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record

4

presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

**1. Legal Overview**

This is a diversity suit premised on the application of Michigan law (the place of business of the insured Plaintiff). Since these motions pertain to matters of state law, the Court must apply state law as determined by the state's highest court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). If a state's highest court has not spoken to an issue, the Court must determine state law based on "all relevant data," including decisions of intermediate state courts, decisions of federal courts interpreting state law, case precedents from other states, and scholarly commentary. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (citing cases). In this process, intermediate state court decisions are especially important unless the other data suggest that the state's highest court would not follow such decisions. *Id.* Furthermore, while substantive state law governs diversity disputes, federal law governs the procedures controlling the award of attorney fees in federal court. *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 528 (6th Cir. 2002).

The underlying insurance contracts and settlement agreement are governed by Michigan law. Under Michigan law, an agreement to reimburse defense costs requires the insurer only to reimburse the insured for "reasonable and necessary" defense costs. *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 485 (Mich. 1996); *Arco Indus. Corp. v. American Motorists Ins. Co.*, 594 N.W.2d 61, 72 (Mich. Ct. App. 1998).

5

In assessing the reasonableness of attorney fees, the Michigan state courts utilize the *Crawley* factors.[3]  Those factors are:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. . . .

> While a trial court should consider the guidelines of *Crawley*, it is not limited to those factors in making its determination.  Further, the trial court need not detail its findings as to each specific factor considered.  The award will be upheld unless it appears upon appellate review that the trial court's finding on the "reasonableness" issue was an abuse of discretion.

*Wood v. Detroit Auto. Inter-Ins. Exch.*, 321 N.W.2d 653, 661 (Mich. 1982).

Such case law is consistent with federal and Sixth Circuit law regarding attorney fees.  The following standards govern fee-shifting attorney awards:

> In an attorneys' fee case, the primary concern is that the fee awarded be "reasonable." *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 1999) (*citing Blum v. Stenson,* 465 U.S. 886, 893, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).  A reasonable fee is "*adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.*" *Geier,* 372 F.3d at 791 (emphasis added); *see also Coulter v. Tennessee,* 805 F.2d 146, 149 (6th Cir. 1986) ("[H]ourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question.").  The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate.  *See Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).  The district court's calculation of the lodestar value, as well as any justifiable upward or downward departures, deserves substantial deference, but only when the court provides "a clear and concise explanation of its reasons for the fee award." *Eckerhart,* 461 U.S. at 438, 103 S. Ct. 1933; *Hadix v. Johnson,* 65 F.3d 532, 535 (6th Cir. 1995).

*Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007).

---

[3]*Crawley v. Schick,*  211 N.W.2d 217, 222 (Mich. Ct. App. 1973).

In addition to those standards, the Court must be mindful that the legal task of determining reasonable attorney fees is not intended to be a "second major litigation." *Eckerhart*, 461 U.S. at 437. Rather, the reviewing court is to exercise simple "billing judgment" with respect to time and hours reviewed. *Id.* This entails a review to exclude excessive, unnecessary and redundant hours as well as to ensure that the "reasonable billing practices of the profession" were observed. *Coulter*, 805 F.2d at 151.

This reasonable billing judgment is not an excuse for an *ex post facto* examination of the litigation strategies of counsel. "The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001); *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

## 2. Necessity of Appellate Argument Preparation

Defendant has challenged the many hours Alticor's attorneys spent preparing for oral argument before the Fifth Circuit. These arguments are somewhat ironic because it was the loss of the appeal which has made especially burdensome National Union's duty to defend the Texas Litigation. From this perspective, it appears that Alticor's attorneys spent too little, not too many, hours in fighting the good fight in the Fifth Circuit.

Additionally, National Union's arguments are somewhat exaggerated in that many of the attorney hours were spent on associated appeal tasks and not simply argument preparation. Overall, the Court finds that the services preformed for argument preparation were reasonable and necessarily expended by counsel and that counsel in private practice would routinely bill for these services without further reduction. National Union's position partakes of the "hindsight" analysis discouraged in both *Wooldridge* and *Martinez*. As such, the Court finds, as a matter of law, that Alticor's Motion for Summary Judgment should be granted and National Union's Motion be denied as to the appellate argument preparation time.

### 3. Legal Database Charges (Westlaw and Lexis)

National Union has argued that, as a legal matter, legal database charges are not compensable. It is noteworthy that the Settlement Agreement is not strictly limited to "attorney fees" *per se*, but includes all pertinent "defense costs" for defense of the Texas litigation. (Settlement Agreement § 1.b.) Thus, the language of the Agreement aptly supports payment of the database charges.

In addition, this conclusion is in lockstep with the growing legal authority authorizing the award of legal database charges to prevailing parties under fee-shifting statutes. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 369 F.3d 91, 98 (2d Cir. 2004) (stating that "If [the firm] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award."); *Invessys, Inc. v. McGraw-Hill Cos.,* 369 F.3d 16, 22 (1st Cir. 2004); *Continental Ill. Sec. Litig.,* 962 F.2d 566, 570 (7th Cir. 1992); *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253, 1258-59 (9th

8

Cir. 2006); *Case v. Johnson County, Kansas,* 157 F.3d 1243, 1258 (10th Cir. 1998); *Farley v. Country Coach, Inc.*, 2008 WL 905215, 5 (E.D. Mich. Mar. 28, 2008); *Crosby v. Bowater Inc. Ret. Plan For Salaried Employees of Great Northern Paper, Inc.*, 262 F. Supp. 2d 804, 817 (W.D. Mich. 2003), *vacated on other grounds by Crosby v. Bowater Inc. Ret. Plan.*, 2004 WL 5389834, 1 (6th Cir. 2004); *see also Northcross v. Board of Educ.*, 611 F.2d 624, 638-39 (6th Cir. 1980) (approving payment of paralegal expenses because regularly billed to clients).

These decisions both recognize the commonplace nature of these charges within the legal market and the necessity of these services for competent legal representation. Such precedent bears repeating in light of the Court's constant concern that counsel effectively research and analyze legal questions by review of all pertinent legal authorities. Therefore, Alticor's Motion for Summary Judgment will be granted as to these expenses and National Union's Motion will be denied.

### 4. Litigation of Bankruptcy Claims

Nattional Union has argued that the pursuit of bankruptcy claims was offensive in nature and does not amount to "defense costs" under either the policy or Settlement Agreement language. Both parties recognize that the following decision of the Western District of Michigan is binding and the Court also finds it to be controlling notwithstanding National Union's other interpretations:

> The parties also dispute whether defendant's duty to defend requires it to assume liability for plaintiff's claims for affirmative relief against other parties in the underlying state court action. Assuming *arguendo* that it even has a duty to defend plaintiff in the state court action, defendant maintains that plaintiff is not entitled to attorney fees for prosecuting counterclaims and cross-claims for affirmative relief in the state action. Plaintiff argues that it is entitled to recover attorney fees for these types of claims because they are actually defensive in nature and prosecuted to limit or defeat plaintiff's liability in the state court action.

> As a matter of law, the Court determines that such defense costs, as are present in this case, are expenses which are reasonable and necessary to limit or defeat liability. *Fireman's Fund,* 790 F. Supp. at 1344; *see also Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.,* 766 F. Supp. 324 (E.D. Pa. 1991).  Further, the Court finds that, based on the evidence, especially the testimony of Joseph Falcone, plaintiff's counterclaims and cross-claims for affirmative relief in the state court action are defensive in nature and prosecuted to limit or defeat plaintiff's liability in that action.  Accordingly, the Court determines that the costs that plaintiff incurred in prosecuting these claims are properly considered as defense costs.

*Oscar W. Larson Co. v. United Capitol Ins. Co.*, 845 F. Supp. 458, 460-61 (W.D. Mich. 1993).

In this case, as in *Oscar W. Larson*, the affirmative prosecution of claims in bankruptcy was intended to limit Alticor's liability with respect to the claims defended in the Texas litigation. Because this was the objectively reasonable strategy of experienced counsel, the Court determines as a matter of law that the claims qualify for reimbursement as "defense costs."  In this respect, Alticor's Motion for Summary Judgment is granted and National Union's motion denied.

**5. Reasonableness of Attorney Fee Rates**

National Union has made various arguments to the effect that the attorney fee rates for the Bryan Cave law firm attorneys are excessive.  These arguments, from the Court's perspective, are simply mistaken.  National Union has a history of paying the rates of the Bryan Cave attorneys to which it is now objecting.  Although this history does not preclude objection now, it is a good indicia of the reasonableness of the rates.  As Judge Posner wrote in the *Taco Bell* case, the market incentives to minimize attorney fees together with the uncertainty that fees will be paid by an insurer typically mean that the rates charged as part of arms-length attorney-client interactions are reasonable.  *See Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1075-76 (7th Cir. 2004). The long experience and high quality services delivered by the Bryan Cave attorneys warranted the rates charged by them.  This is particularly true of attorneys John Pierce and Thomas Walsh, whose

resumes include many arguments before the Circuit Courts of Appeal and the United States Supreme Court. The retention of these attorneys at the billed rates was reasonable in light of their detailed collective knowledge of the Alticor operations and marketing strategies.[4]

Whether the attorney fees are tested under such cases as *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995), *Communities for Equity v. MHSAA,* 2008 WL 906031 (W.D. Mich. Mar. 31, 2008), *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984), or *Fuhr v. School Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004), the conclusion follows in any event that the rates are reasonable in light of the attorneys' education, experience, reputation and unique qualifications. *See also Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984). As such, Alticor's Motion will be granted and National Union's motion denied.

### 6. 12-Percent Penalty

Since this matter is controlled by state law, the District Court must also apply the substantive law governing insurance benefits, including Michigan Compiled Laws § 500.2006(4). This statute requires that if insurance benefits are not paid within 60 days of proof of loss to the insurance company, the claimant is entitled to a 12 percent interest penalty. The Michigan Supreme Court's decision in *Yaldo v. North Pointe Ins. Co.*, 578 N.W.2d 274, 277 (Mich. 1998) and the later conflicts panel decision of the Michigan Court of Appeals in *Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 741 N.W.2d 549, 557 (Mich. Ct. App. 2007) both endorsed the view that the "reasonably in dispute" limitation of the statute does not apply to first-party insurance claims. Given such

---

[4]In fact, as noted earlier, the Bryan Cave firm actually discounted its fees before billing National Union by a significant (9 percent) margin.

concurrence and the reasonableness of the statutory construction, Alticor is entitled to the 12-percent penalty as a matter of Michigan law.

**<u>CONCLUSION</u>**

For the reasons given herein, Alticor's Motion for Summary Judgment will be granted and National Union's Motion denied. Accordingly, Judgment shall enter awarding Alticor the sum of $439,359.51 plus a pre-judgment statutory penalty of 12 percent per annum in accordance with Michigan Compiled Laws § 500.2006(4).

Dated: August 28, 2008                                  /s/ Richard Alan Enslen
                                                         RICHARD ALAN ENSLEN
                                                         Senior United States District Judge

12