UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALTICOR, INC., | Case No. 1:2007-cv-522 |
| Plaintiff, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Ellen S. Carmody |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PENNSLYVANIA, | |
| Defendant. | |

## Order on Remand from the Sixth Circuit

**Referring Texas Bankruptcy Court Fee-Apportionment Issue to Magistrate Judge for Disposition;
Referring Attorney-Fee "Cap" Issue to Magistrate Judge to Schedule Proceedings;**

**Directing Parties to Calculate Amounts due Under Uncontested Portions of Enslen Judgment**

Plaintiff Alticor, Inc. ("Alticor") purchased insurance policies from defendant National Union Fire Insurance Company of Pennsylvania ("National Union"). *See Alticor v. National Union Fire Ins. Co. of Pa.*, – F. App'x –, –, 2009 WL 3198748, *1 (6th Cir. Oct. 7, 2009) (Moore, Rogers, E.D. Ky. D.J. Amul Thapar). In 2003, the parties sought a declaratory judgment in this court regarding the extent to which those policies obligated National Union to defend Alticor in certain litigation in Texas. The main issue was whether National Union's duty to defend (or defray defense costs) was subject to one $2 million deductible or *two* such deductibles. In 2005, the Honorable Richard Alan Enslen, Senior U.S. District Judge (now retired) ruled in favor of Alticor, finding that

the Texas lawsuits constituted a single "occurrence" subject to only one $2 million deductible. *See Alticor v. National Union Fire Ins. Co. of Pa.*, No. 1:2003-cv-350, 2005 WL 2334658 (W.D. Mich. Sept. 23, 2005) (Enslen, J.).

In 2006, the parties executed a written settlement agreement. National Union agreed to pay Alticor $7 million in defense costs incurred *prior to* April 17, 2006, and it waived all right to "payments, reimbursements of attorneys fees or costs and/or settlements" which Alticor might win in the underlying Texas litigation. *See Alticor*, – F. App'x at –, 2009 WL 3198748 at *1. National Union also agreed that it had "a continuing duty to defend Alticor in the Texas litigation" – defined to include specific civil actions in both federal and state court – "with regard to defense costs incurred by Alticor *after* April 17, 2006." *Id.*, – F. App'x at –, 2009 WL 3198748 at *1 (footnote 1 omitted).

When Alticor forwarded legal invoices, National Union paid some but refused to pay others. First, National Union refused to pay for bankruptcy proceedings involving the parties to the Texas litigation. *See Alticor*, – F. App'x at –, 2009 WL 3198748 at *1. Second, National Union capped attorney fees at "only" $410 per hour, which was the highest rate charged by Alticor's local Texas counsel, refusing to pay the substantially higher hourly rates charged by Alticor's Washington, DC counsel. *Id.* Third, with regard to an appeal to the U.S. Court of Appeals for the Fifth Circuit, National Union refused to pay electronic-legal-research charges (presumably WestLaw and/or Lexis charges) and paid for only half the time which Alticor's counsel charged for preparation for oral argument. *Id.* In all, National Union allegedly paid only about $186,000 of the $580,000 sought by Alticor under the settlement agreement. *Id.,* – F. App'x at –, 2009 WL 3198748 at *2.

Alticor filed the instant action in May 2007, invoking undisputed diversity jurisdiction. The

case was assigned to the Honorable Richard Alan Enslen, Senior District Judge (now retired) as Case No. 1:2007-cv-522, and National Union filed an answer and affirmative defenses in August 2008. *See* Doc. Nos. 1 and 8. Alticor asserted five claims under Michigan law: breach of contract (the 2006 settlement agreement), three claims of estoppel on the theory that National Union knew about Alticor's D.C. counsel rates at the time of the settlement but did not object, and one claim for 12% interest under Michigan's penalty-interest statute. *See Alticor*, – F. App'x at –, 2009 WL 3198748 at *2. After unsuccessful mediation and discovery disputes from November 2007 through June 2008, the parties cross-moved for summary judgment. *See* Docs. 53 & 54 (motions) and 55 & 56 (opening briefs). The parties filed opposition briefs in July 2008, *see* Docs. 63 & 65, and reply briefs in August 2008, *see* Docs. 68 & 70.

In late August 2008, Judge Enslen granted summary judgment to Alticor on all issues and entered judgment in the amount of $439,359.51 plus pre-judgment interest at the Michigan "penalty interest" statutory rate of 12%. *See Alticor v. Nat'l Union Fire Ins. Co. of Pa.*, – F. Supp.2d –, 2008 WL 4057845 (W.D. Mich. Aug. 28, 2008) (Enslen, J.). National Union timely filed a notice of appeal on September 25, 2008. On October 7, 2009, the U.S. Court of Appeals for the Sixth Circuit issued its opinion affirming in part, reversing in part, and remanding. The mandate issued on October 30, 2009.

**Issue One - Requires Action On Remand.** With regard to National Union's unilateral capping of Alticor's reimbursement to the local-counsel rate, our Circuit wrote as follows:

> Summary judgment was not warranted on the breach of contract claim with respect to National Union's refusal to reimburse Alticor at the rates charged by its D.C. counsel. Whether National Union's capping of its reimbursement of Alticor's attorney fees at $410 per hour breached the contract appears to be a fact question that

is both genuine and material, and not a legal issue as to which summary judgment would have been appropriate.

\* \* \*

National Union's obligation to pay the higher fees depends on whether the fees were reasonable and necessary. *See Am. Bumper . . . .*, 550 N.W.2d 475, 485 (Mich. 1996) . . . . In the context of this case the question appears to be one of fact rather than one of law.

The question of whether Alticor's reimbursement requests were reasonable is therefore a question for a factfinder. Whether a party has breached a contract is typically a question of fact. *See State-William P'ship v. Gale*, 425 N.W.2d 756, 760 (Mich. Ct. App. 1988) . . . . Moreover, Michigan appears to empower juries to decide similar questions of reasonableness, such as whether a party attempted to perform a contract within a "reasonable" time. *See Waters v. Union Trust Co.*, 89 N.W. 687, 688 (Mich. 1902). Similarly, whether an insured has given an insurer a "reasonable" time to respond to correspondence is a jury question if "reasonable minds can differ." *See Moore v. First Sec. Cas. Co.*, 568 N.W.2d 841, 845 (Mich. Ct. App. 1997).

*In this case, reasonable minds could differ as to whether the higher fees were reasonable and necessary. A factfinder could accept National Union's argument that the evidence shows that the D.C. counsel's rates were considerably higher than local counsel's rates and that the disparity is unreasonable in the context of this case. On the other hand, a factfinder could determine that paying the D.C. counsel's rates was necessary in light of those lawyers' skill and experience compared to that of local counsel.* Because we have neither a jury verdict nor detailed findings of fact and conclusions of law from a district court, we are not in a position to resolve this question on appeal.

Dispositive legal guidance is not provided by those cases in which Michigan courts have awarded the attorney fees actually incurred by a party after its insurer wrongfully refused to defend it. \* \* \* When an insurance company is vigorously denying that it has any duty to defend, the insured has an incentive to minimize its legal expenses (for it might not be able to shift them). In such cases, the actually incurred fees are a reasonable measure of the damages caused by the insurer's wrongful refusal to defend. In contrast, in this case National Union has not wrongfully denied its duty to defend, but only disputes whether the amounts that Alticor claims were necessary to conduct that defense are reasonable.

The set of facts presented by this case does not appear to arise often, likely because insurers that admit to being under a duty to defend tend to assume control of the defense so as to control costs. It is not clear why National Union did not do so, but that does not mean that Alticor could bill any amount it incurred without regard to reasonableness. Alticor cannot take National Union's agreement to fund a defense

> as a blank check for Alticor to spend whatever it desires beyond that which is objectively reasonable.
>
> The atypicality of the situation means that none of the Michigan duty-to-defend cases we have been referred to are directly on point, which contributes to our determination that the issue is properly considered one of fact.

*Alticor*, – F. App'x at –, 2009 WL 3198748 at *2-4 (footnote 3 omitted) (citation to Seventh Circuit and internal quotation marks and alterations omitted) (emphasis added).

**Issue Two - Requires Action On Remand. With regard to Alticor's attorney fees/costs in the Texas bankruptcy proceeding,** Judge Enslen reasoned that Alticor's "affirmative prosecution of claims in bankruptcy was intended to limit Alticor's liability with respect to the claims defended in the Texas [non-bankruptcy] litigation," which was an "objectively reasonable strategy of experienced counsel," thus rendering the bankruptcy counsel charges "defense costs." *Alticor*, 2008 WL 4057845 at *5-6 (relying on *Larson Co. v. United Capitol Ins. Co.*, 845 F. Supp. 458, 460-61 (W.D. Mich. 1993)). National Union appealed this ruling, and the Circuit vacated the grant of summary judgment. *See Alticor*, – F. App'x at –, 2009 WL 3198748 at *5.

> Our Circuit explained the impropriety of summary judgment on the bankruptcy-costs issue:
>
> Summary judgment was also improper on the liability for fees incurred by Al[ti]cor's in the bankruptcy proceedings. While the settlement agreement contemplated some defense work in bankruptcy court, Alticor has not shown how much of its legal work in the bankruptcy court related to defense costs.
>
> At the time of the settlement agreement, Alticor had prevailed in arbitration against the Texas plaintiffs, and had obtained a significant judgment against them. The Texas plaintiffs appealed the federal district court's confirmation of the arbitration award to the Fifth Circuit, but also filed for bankruptcy. Hence, what was left of the plaintiffs' claims (a chance to appeal to have the arbitration award set aside and start over in district court) became property of their bankruptcy estates.
>
> *Alticor had two reasons to appear in the bankruptcy litigation – as a creditor to*

*assert claims to its award from the arbitrator, and as a potential debtor as the defendant in the case then on appeal in the Fifth Circuit. As a creditor, Alticor had a claim on the assets of each estate. And as a potential debtor, Alticor had reason to seek settlement with the bankruptcy trustee of each estate.*

National Union's duty to defend Alticor extended only to Alticor's role as a potential debtor. Alticor as a creditor sought money from the bankruptcy estate, but recovery of that money would not contribute to Alticor's defense – indeed, under the settlement agreement, National Union was not entitled to offset any of Alticor's financial recovery from the Texas plaintiffs against the costs of Alticor's defense.

Alticor's pursuit of its claims as a creditor thus does not comfortably fit within the normal definition of the duty to defend. Rather, that pursuit resembles normal collection actions by a business against its debtors. The Michigan Supreme Court has distinguished between "defense costs" and "normally incurred costs of doing business." *Am. Bumper*, 550 N.W.2d at 486. Costs incurred pursuing claims against debtors are normally costs of doing business.

Alticor's argument that pursuing offensive claims against the bankruptcy estates put pressure on the trustees to settle goes too far – if Alticor had an unrelated tort claim against the estates, for instance, prosecuting it would not be related to limiting Alticor's liability as a potential estate debtor, even if pursuing the unrelated claim put pressure on the trustees to reach a global settlement. Any litigation, no matter how tangentially related to limiting Alticor's potential liability, would be justified by Alticor's theory. Rather, National Union's duty to defend extended only to representing Alticor's interests as a potential debtor – in other words, to representing Alticor only with respect to settling the bankruptcy estates' potential claims against Alticor.

*National Union's duty to defend thus did not encompass all of Alticor's litigation activity in the bankruptcy court. Summary judgment is therefore not warranted at this stage of the litigation, as Alticor claimed a right to reimbursement for all of the bankruptcy court litigation.*

*On remand, Alticor may recover for breach of contract only for bankruptcy court legal bills that it can show were directly for work relating to Alticor in its role as a potential estate debtor. Alticor may not recover for work done solely to advance its bankruptcy court claims as a creditor against the Texas plaintiffs.*

*Alticor*, – F. App'x at –, 2009 WL 3198748 at *5 (some paragraph breaks added, italics added).

Accordingly, the Magistrate Judge will determine which portion of Alticor's bankruptcy-court fees were "directly for work relating to Alticor in its role as a potential estate *debtor*" (reimbursable) and

which portion of Alticor's bankruptcy-court fees were "for work done solely to advance its bankruptcy court claims as a *creditor* against the Texas plaintiffs" (not reimbursable).

**Issue Three - Resolved (Not Appealed). Judge Enslen determined that the number of hours Alticor's attorneys spent on Fifth Circuit Court of Appeals proceedings was not unreasonable**, writing as follows:

> Defendant has challenged the many hours Alticor's attorneys spent preparing for oral argument before the Fifth Circuit. These arguments are somewhat ironic because it was the loss of the appeal which has made especially burdensome National Union's duty to defend the Texas litigation. From this perspective, it appears that Alticor's attorneys spent too little, not too many, hours in fighting the good fight in the Fifth Circuit.
>
> Additionally, National Union's arguments are somewhat exaggerated in that many of the attorney hours were spent on associated appeal tasks and not simply argument preparation. Overall, the Court finds that the services p[er]formed for argument preparation were reasonable and necessarily expended by counsel and that counsel in private practice would routinely bill for these services without further reduction. National Union's position partakes of the "hindsight" analysis discouraged in both *Wooldridge* [*v. Marlene Indus Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated o.g. by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of HHS*, 532 U.S. 598, 600 (2001)] and [*Grant v.*] *Martinez*[, 973 F.2d 96 (2d Cir. 1992)]. * * *

*Alticor*, – F. Supp.2d at –, 2008 WL 4057845 at *4-5. National Union did not appeal this portion of Judge Enslen's ruling. *See Alticor*, – F. App'x at –, 2009 WL 3198748 at *2.

**Issue Four - Resolved (Not Appealed). With regard to electronic legal-research charges**, National Union argued that as a matter of law, WestLaw and Lexis legal database charges are not compensable. Judge Enslen rejected that argument, reasoning first that the section 1.b of the settlement agreement obligated National Union to pay not only "attorney fees" *per se*, but all pertinent "defense costs" in the Texas litigation. *Alticor*, – F. Supp.2d at –, 2008 WL 4057845 at

*5. Judge Enslen also relied by analogy on "the growing legal authority authorizing the award of legal database charges to prevailing parties under fee-shifting statutes." *Id.* at *5 (citing, *inter alia*, *Crosby v. Bowater Inc. Ret. Plan for Salaried Employees of Great Northern Paper, Inc.*, 262 F. Supp.2d 804, 817 (W.D. Mich. 2003), *vac'd o.g.*, 2004 WL 5389834, *1 (6th Cir. Dec. 29, 2004) (p.c.) (C.J. Boggs, Nelson, Sutton) (not in F.3d or F. App'x)). "These decisions," explained Judge Enslen,

> both recognize the commonplace nature of these charges within the legal market and the necessity of these services for competent legal representation. Such precedent bears repeating in light of the Court's constant concern that counsel effectively research and analyze legal questions by review of all pertinent legal authorities.

*Alticor*, – F. Supp.2d at –, 2008 WL 4057845 at *5. National Union did not appeal this portion of Judge Enslen's ruling either. *See Alticor*, – F. App'x at –, 2009 WL 3198748 at *2.

**Issue Five - Resolved (Affirmed).** **With regard to Alticor's claim for 12-percent "penalty" interest under Michigan statute, Judge Enslen wrote as follows:**

> Since this matter is controlled by state law, the District Court must also apply the substantive law governing insurance benefits, including Michigan Compiled Laws § 500.2006(4). This statute requires that if insurance benefits are not paid within 60 days of proof of loss to the insurance company, the claimant is entitled to a 12 percent interest penalty. * * * *Yaldo* . . . (Mich. 1998) and the later conflicts panel decision of the Michigan Court of Appeals in *Griswold Properties* . . . (Mich. Ct. App. 2007) both endorsed the view that the "reasonably in dispute" limitation of the statute does not apply to first-party insurance claims. Given such concurrence and the reasonableness of the statutory construction, Alticor is entitled to the 12-percent penalty as a matter of Michigan law.

*See Alticor*, – F. Supp.2d at –, 2008 WL 4057845 at *7. The Sixth Circuit affirmed Judge Enslen, holding that "[t]he plain text of the [Michigan] statute as interpreted by the Michigan courts applies to National Union's contract to provide certain benefits to Alticor. National Union thus is liable for

-8-

12% penalty interest on any funds it wrongfully withheld from Alticor." *Alticor*, – F. App'x at –, 2009 WL 3198748 at *7.

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1)(A), the following issue is **REFERRED** to the Honorable Ellen S. Carmody, United States Magistrate Judge, for determination: which portion of Alticor's Texas bankruptcy-court attorney fees and costs were incurred "directly for work relating to Alticor in its role as a potential estate *debtor*" (reimbursable) and which portion of said fees and costs were incurred "for work done solely to advance its bankruptcy court claims as a *creditor* against the Texas plaintiffs" (not reimbursable).

On Alticor's breach-of-contract claim with respect to National Union's refusal to reimburse Alticor at the rates charged by its D.C. counsel, the Magistrate shall schedule proceedings – including mediation sessions and/or a settlement conference – with regard to this issue: under the circumstances, were the rates which Alticor paid its D.C. counsel "reasonable and necessary"?

No later than January 25, 2010, the parties **SHALL JOINTLY FILE** a notice stating the amount of attorneys fees and costs which National Union owes Alticor, including penalty interest under MICH. COMP. LAWS § 500.2006(4), on the portions of Judge Enslen's judgment which were either affirmed or not appealed.

This is not a final order.

**IT IS SO ORDERED this   23rd   day of November 2009.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge